**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| FINANCIAL MARKETS INTERNATIONAL, INC., <br><br>    Plaintiff, <br><br> v. <br><br> BOOZ ALLEN HAMILTON INC., <br><br>    Defendant. | Case No. 1:11-cv-01299-TSE-JFA |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR ENTRY OF A PROTECTIVE ORDER**

Defendant Booz Allen Hamilton Inc. ("Defendant" or "BAH"), by counsel, submits this Memorandum in Support of Defendant's Motion for Entry of a Protective Order pursuant to Federal Rule of Civil Procedure 26(c). BAH requests that the Court limit the scope a depositions noticed by Plaintiff Financial Markets International, Inc. ("Plaintiff" or "FMI"), as set forth herein. This motion seeks to prevent FMI from taking inappropriate and unduly burdensome discovery caused solely by its own irresponsibility and delay.

**CERTIFICATION OF GOOD FAITH EFFORT**

Undersigned counsel has satisfied the requirements of conferring in good faith in an effort to resolve the dispute without court action, consistent with the requirements of Fed. R. Civ. Pro. 26(c). On August 30, 2013 at 2:00 p.m., defense counsel participated in a telephone conference with Plaintiff's counsel in which defense counsel raised the issues identified herein regarding the impracticability of conducting these depositions as scheduled and the improper breadth of the 30(b)(6). In response, FMI stated refused to agree.

## BACKGROUND

1. As the Court is aware from the three prior motions to compel, Defendant BAH was a prime contractor for United States Agency for International Development ("USAID") Ukraine's Financial Sector Rehabilitation Program, Global Business Trade and Investment ("GBTI") Prime No. EEM-I-00-07-00007-00. Plaintiff FMI was a subcontractor to BAH on the FINREP project pursuant to the terms of a subcontract dated December 18, 2009, by and between BAH and FMI (the "Subcontract").

2. The Subcontract was awarded on a time-and-materials basis, compensating the Subcontractor for services on the basis of a fixed daily rate. Pursuant to Article 1.5 of the Subcontract:

> Booz Allen shall allocate not less than thirty-five (35%) percent of the total Level of Effort dollar value for [FINREP] with the good faith goal of a total allocation of forty (40%) percent during the period of performance of [FINREP], subject to (1) Client acceptance of the Subcontractor proposed personnel and; (2) the subsequent satisfactory performance of the tasks by the approved personnel performing under the Agreement.

Although FMI received (and was paid for) 34.67% of the LOE, Plaintiff for some reason still pursues this lawsuit seeking additional sums under Article 1.5.[1]

3. On June 10, 2013 (three days after a hearing during which the Court set an

---

[1] As set forth above, Plaintiff FMI filed this action for breach of contract with three fraud-related counts long before the Subcontract expired with specious claims that BAH never intended to perform. The Honorable T.S. Ellis, III dismissed the fraud-related counts, in part because BAH was indeed performing the contract and FMI's LOE was up to 29%, and the Court stayed the action until after the contract expired to see whether FMI's LOE rose close to 35%, which it did through the diligent efforts of BAH. While FMI now seeks LOE up to 40%, the Court also expressed skepticism about FMI's claims, noting multiple times that a 40% "goal" is merely "aspirational." *E.g.*, Mots. Hr'g 4:17-18 (Feb. 10, 2012) ("The contract has an aspirational part to it that says 40 percent."); Mots. Hr'g 13:4-8 (Mar. 16, 2012) (FMI's counsel agreeing the goal is "aspirational"). Nevertheless, FMI stubbornly pursues this matter.

October 1, 2013 trial date), defense counsel sent a letter to FMI's counsel seeking to:

> amicably agree on a discovery schedule and scope in light of the Court's comments from the bench on June 7, 2013. I believe the Court will expect us to work together in good faith to reach agreement on these matters, keeping in mind that the close of discovery is September 13, 2013.

Letter from Attison Barnes to Karl Blanke (June 10, 2013), attached hereto as **Exhibit A**.

4. Over the course of the next two and a half months, undersigned counsel continually sought to coordinate with Plaintiff's counsel regarding the scheduling of depositions, culminating in Defendant having to file two motions to compel Plaintiff's participation, both of which were granted.

5. On August 27, 2013 (almost *four months* after discovery re-opened and just *two weeks* prior to the discovery deadline), FMI, with no prior notice to defense counsel and without the customary courtesy of coordinating available dates and times of counsel and witnesses, unilaterally noticed by electronic mail nine (9) depositions to occur in a five (5) day period. Attached as **Exhibit B**. Regardless of anyone else's schedule, FMI seeks to impose its will to have all nine (9) depositions take place during the week of September 9, 2013.[2]

6. Despite the fact that FMI counsel has been actively involved in this litigation (e.g. serving written discovery), FMI waited until essentially the last possible day to notice these depositions. *See* Fed. R. Civ. P. 30(b)(1) (requiring "reasonable notice" to every other party); Local Rule 30(H) (stating that 11 days generally shall constitute reasonable notice for

---

[2] FMI noticed the following depositions: Monday, September 9, 2013 (9:00 am: Patrick Rader; 2:00 pm: BAH 30(b)(6) designee); Tuesday, September 10, 2013 (9:00 am: John Mennel; 2:00 pm: Mark Belcher); Wednesday, September 9, 2013 (9:00 am: John Glover; 2:00 pm: William Purdy); Thursday, September 12, 2013 (9:00 am: Krista Hodgkins; 2:00 pm: Jen Braswell); Friday, September 13, 2013 (9:00 am: Donald Pressley).

3

depositions). By waiting until the last possible moment shortly before Labor Day weekend to act and by failing to consult defense counsel as to his availability and the witnesses' availability for those days, FMI acted at its own risk as to whether it could complete nine depositions in five (5) days or even whether FMI could obtain timely and proper service of process on the individuals who do not work for the Defendant. That FMI did not plan ahead considering standing obligations of counsel and the deponents is also at FMI's own risk. Two of the noticed individuals live and work outside the United States.

7. Despite the lack of courtesy on advanced notice, defense counsel has scrambled to determine whom it could produce and when. As a good faith accommodation shortly before the Labor Day weekend, defense counsel has managed to track down some of the witnesses, and has so far obtained commitments of BAH witnesses to appear and otherwise made himself available (canceling several other obligations) as follows:

- 9/9/13 2:00 p.m. - Ann Ebberts as BAH's 30(b)(6) designee.
- 9/10/13 - depositions of third parties Mennel, Belcher, and/or Rader (if FMI can get subpoenas served).
- 9/11/13 - deposition of Glover (if FMI can get subpoena served).
- 9/12/13 - 9:00 a.m. BAH's Krista Hodgkins.
- 9/12/13 - 2:00 p.m. BAH's Don Pressley.

8. Defense counsel has notified opposing counsel that he is willing to make himself available all week except for previously-scheduled commitments the morning of September 9, after 2:30 p.m. on September 11, and September 13 (when undersigned counsel is out of the country).

9. Eight of the nine depositions are individuals, and the ninth was noticed as a 30(b)(6) deposition of BAH, which listed fourteen (14) areas of examination, several of which relate to events that occurred before the execution of the Subcontract, which the Court, Plaintiff's

counsel, and even Plaintiff's President and Chief Executive Order have acknowledged are irrelevant to FMI's sole remaining claim for breach of contract.

## ARGUMENT

Rule 26 of the Federal Rules of Civil Procedure furnishes the Court with broad discretion to enter protective orders governing the timing and manner of depositions. Fed. R. Civ. P. 26(b)(2)(C)(iii), 26(c). The Court is authorized to prevent depositions that are (1) unreasonably noticed or (2) that unduly burden a party or deponent. *See* Fed. R. Civ. P. 26, 30.

*First*, a party who wants to depose a person by oral questions must give reasonable written notice to the opposing party. Fed. R. Civ. Pro. 30(b). In this Court, reasonable notice "will vary according to the complexity of the contemplated testimony and the urgency of taking the deposition of a party or witness at a particular time and place." Local Rule 30(H). "Reasonable notice is a fact-specific inquiry and the Court may consider all relevant factors, including the locations of the deponents. *See Hart v. United States*, 772 F.2d 285 (6th Cir. 1985) ("The rules do not require any particular number of days, so that reasonableness may depend on the particular circumstances.") *Second*, the Court is authorized to, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *See* Fed. R. Civ. P. 26(c); *see also* Fed. R. Civ. P. 26(b) (court must limit extent of discovery if "the burden or expense of the proposed discovery outweighs its likely benefit"). This includes the authority of the Court to prevent depositions. *See* Fed. R. Civ. P. 26(c).

Here, Defendant's eleventh-hour notices of deposition for nine people over five days without coordinating in advance on counsel's and witnesses' schedules are unreasonable and unduly burdensome for counsel and the deponents. While undersigned counsel is trying his best to accommodate the demands, the Court should prevent FMI from unilaterally forcing BAH to

5

participate in nine depositions, over five days, on dates and time Plaintiff alone has chosen because of Plaintiff's unexplained delay and complete disregard for deadlines and the standing obligations of others. The Court should also limit the scope of Plaintiff's depositions to those that are reasonable in light of the burden or expense of such depositions.

### I. Under the Circumstances of Plaintiff's Delay in Providing any Notice to Defendant, Plaintiff Should Not Be Permitted to Force Inconveniently-Scheduled Depositions.

Plaintiff's counsel's unilateral, eleventh-hour, uncoordinated notice of nine depositions all to take place in one week—the last week before the close of discovery—all on dates only the Plaintiff selected constitutes an abusive litigation tactic causing undue burden to BAH and deponents. These notices are not only in complete disregard for the business and personal obligations of both opposing counsel and the nine proposed deponents, they are excessive given that Plaintiff's notices required nine depositions in five days, and Plaintiff fails to explain why it could not have alerted defense counsel to the names of prospective deponents weeks ago (to accommodate their schedules) and why it waited so long.

Discovery in this case opened in June 2013. Undersigned counsel first contacted Plaintiff's counsel to discuss the scheduling of depositions on June 10, 2013, three days after the Court lifted the discovery stay and set an October 1, 2013 trial date. FMI has offered no reason why it did not act diligently and instead delayed noticing any depositions until August 27, 2013, at essentially the last possible moment.[3] FMI waited almost three months to notice a deposition and then scrambled to notice nine depositions in one week.

---

[3] Plaintiff served written affirmative discovery upon BAH during the last two months, and even when counsel was in trial in another case, he was still counsel of record in this proceeding with obligations in this Court. Moreover, Plaintiff's counsel represented to the Court at the August 9, 2013 motions hearing that the presentation of evidence in that trial had concluded, and has not explained why he waited another two weeks before trying to schedule depositions.

6

FMI's delay and failure to coordinate the scheduling of its depositions has forced BAH to scramble to make its witnesses available on the dates noticed by FMI, despite the fact that defendant's counsel has prior obligations that he cannot reschedule on the morning of September 9, 2013, the afternoon of September 11, 2013, and all day on September 13, 2013.  Moreover, two of the deponents—Donald Pressley and Jen Braswell—are not based in the United States.  Mr. Pressley is based in the United Arab Emirates and Ms. Braswell in Tbilisi, Georgia.  During the week that FMI is attempting to schedule these depositions, Ms. Braswell will be in Tanzania for a long-scheduled work obligation.  Defendant, nevertheless, is trying to accommodate Plaintiff's requests.  Defendant confirmed to Plaintiff's counsel that BAH's 30(b)(6) designee is available the afternoon of August 9, 2013.  Defendant also is attempting to determine the feasibility of making Mr. Pressley and Ms. Braswell available by videoconference from their respective locations.  However, given Plaintiff's unreasonable and is unduly burdensome notices, Defendant has not yet been able to make the all the necessary accommodations and may not be able to do so.

Defense counsel has just learned, for example, that FMI counsel proceeded with serving a subpoena on third party Patrick Rader even though counsel knew that BAH counsel was unavailable at that time.  Had FMI counsel extended the courtesy of working with BAH counsel instead of delaying, a mutually agreeable schedule could have been agreed (as defense counsel tried to do with Plaintiff's counsel starting in June).

This is a situation of FMI's own making, and FMI, by sending numerous unilaterally-scheduled notices of depositions for the last week of discovery, has placed an undue burden on BAH.  Accordingly, the Court should issue a protective order preventing FMI from unilaterally setting dates and times for deposition at such a late stage and after failing to coordinate with

counsel and requiring Plaintiff to schedule depositions during the times when defense counsel and the deponents are available.

## II. FMI Should Not Be Permitted to Inquire Into Events Prior to The Signing of the Subcontract, Which Clearly Are Irrelevant and Improper.

FMI's 30(b)(6) notice of Defendant indicates its intent to inquire (both in the 30(b)(6) deposition and, likely, in additional depositions) into matters and negotiations that occurred prior to the signing of the subcontract, and therefore are not pertinent to Plaintiff's sole remaining claim for Breach of Contract. Specifically, Plaintiff's 30(b)(6) notice identifies four areas of examination that go specifically to events that occurred before the parties entered into the subcontract:

> 2. The bidding process and communications between USAID and BAH which led to BAH being awarded the FINREP contract.
>
> 3. BAH's decision to partner with FMI in pursuing the FINREP contract.
>
> 4. BAH's decision to enter into the subcontract with FMI.
>
> 5. BAH's drafting and formation of the subcontract with FMI.

These areas are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and Plaintiff therefore should be precluded from inquiring into these areas.

Plaintiff's complaint originally contained four counts, three of which alleged various theories of fraud relating to events before the execution of the subcontract. On February 10, 2012, the Court granted Defendant's motion to dismiss as to the three fraud counts, leaving only Plaintiff's claim for breach of contract. At the motions hearing, Judge T.S. Ellis, III recognized that any pre-contractual statements are irrelevant, because "[s]tatements regarding the LOE allocation targets eventually became provisions in the subcontract." *See* Mots. Hr'g Tr. (Feb. 10, 2012) 28:10-13. As such, Plaintiff's areas of inquiry no. 2-5 are not relevant to Plaintiff's

remaining claim. Plaintiff's counsel recognized as much in an e-mail to defense counsel dated June 15, 2013, in which he stated that "FMI obviously only seeks from BAH information related to the remaining cause of action for breach of contract" and withdrew its interrogatory and document requests pertaining to events that occurred before the execution of the subcontract. *See* Email from Karl Blanke to Attison Barnes (June 15, 2013, 4:14 pm), attached hereto as **Exhibit C**.

The irrelevance of Plaintiff's inquiries is reinforced by Article 2.34 of the subcontract, which states under the hearing "Complete Agreement": "This subcontract is the complete and exclusive statement of the understandings between the parties with regard to the subject matter hereof, and supersedes in its entirety any previous understandings between the parties, whether oral or written." At the February 10, 2012 motions hearing, Plaintiff's counsel recognized that "the purpose of the integration clause is if a plaintiff or either party comes forward and attempts to show statements outside of the contract to somehow either help interpret the statements in the contract or contradict them." 10:25-11:4. He went on to expressly state that "FMI is doing neither." *Id.* at 11:4.

Finally, the August 26, 2013 deposition of Plaintiff's President and Chief Executive Officer, Mr. Charles Seeger, contained the following exchange:

> Q  Is this the subcontract that was entered into between FMI and Booz Allen for the FINREP I program?
>
> A Yes.
>
> Q And does it show your signature or –
>
> A Yes.
>
> Q At the last page?

> A Yes.
>
> Q And by your signature, you agreed to the terms in that subcontract?
>
> A Yes.

*See* Excerpt of Deposition Transcript of Charles Seeger (8-26-2013) 43:18-44:3, attached hereto as **Exhibit D**. FMI seeks relief on the terms of a subcontract executed by the parties, and FMI counsel argues that the subcontract is clear and unambiguous. As such, and especially in light of the Complete Agreement clause, exploring the parties' positions in negotiation of the subcontract is a waste of time and meaningless to actual terms of the subcontract which forms the basis of this lawsuit. Plaintiff's claim will rise or fall on the language of the executed subcontract, not on negotiations superseded by the final agreement. Indeed, that is precisely why FMI counsel withdrew all discovery related to pre-contract events. Accordingly, the Court should enter a protective order prohibiting Plaintiff from wasting the parties' and counsel's time in an otherwise busy week of depositions on pre-contract events and negotiations.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court enter a Protective Order: (1) preventing FMI from unilaterally setting dates and times for deposition at such a late stage and after failing to coordinate with counsel; (2) requiring Plaintiff to schedule depositions during the times when defense counsel and the deponents are available; and (3) prohibiting FMI from inquiring into events that occurred before the execution of the subcontract, including areas 2-5 of the 30(b)(6) notice.

Dated:  August 30, 2013                    BOOZ ALLEN HAMILTON INC.
                                           By counsel


                                           /s/ Attison L. Barnes, III
                                           Attison L. Barnes, III (VA Bar No. 30458)
                                           WILEY REIN LLP
                                           1776 K Street, N.W.
                                           Washington, DC  20006
                                           Telephone:  (202) 719-7000
                                           Fax: (202) 719-7049
                                           abarnes@wileyrein.com
                                           *Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I, Attison L. Barnes, III, hereby certify that on August 30, 2013, I electronically filed the foregoing by using the CM/ECF system, which will cause a copy to be served upon:

    Karl G. Blanke, Esq.
    Law Offices of Karl G, Blanke, PLLC
    4023 Chain Bridge Road, Suite 5
    Fairfax, VA 22030

    /s/ Attison L. Barnes, III
    Attison L. Barnes, III, Esq.
    WILEY REIN LLP
    1776 K Street, NW
    Washington, DC 20006
    Tel: (202) 719-7000
    Fax: (202) 719-7049
    abarnes@wileyrein.com

    *Counsel for Defendant*